H. D. HAMAKER, APPELLANT, V. FRANK MIDDAUGH, APPELLEE.

278 N. W. 849

FILED APRIL 1, 1938. No. 30233.

*Battelle, Strehlow & Morearty,* for appellant.

*E. L. Mahlin, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and FALLOON, District Judge.

FALLOON, District Judge.

This is an action at law brought by the plaintiff, who is the appellant here, to recover upon two promissory notes given by the defendant, appellee, as part payment of the purchase price of land. The defendant in his answer and cross-petition admitted the execution of the two notes, denied any consideration therefor, alleged fraud and misrepresentation, prayed for a rescission of the sale contract, judgment for the cash payment, reconveyance of the Colorado land from plaintiff taken on exchange, or accounting therefor, cancelation of the notes, and damages. The case was transferred to the equity docket and there tried by the court below.

The court below set aside the sale agreement, canceled and ordered returned to plaintiff the deed to the Iowa land given to wife of defendant, and also canceled the two notes sued on, decreed that the deed to the Colorado land, which had not been recorded, be surrendered back and held for naught. Further, the lower court held, if any liens had been filed against the Colorado land, that they be removed, and further gave judgment to defendant for $303.97 with interest at 6 per cent. from date of decree,

this sum, being the difference between the down payment of $1,000 and the rent taken from the Iowa land. These findings form the basis of appellant's appeal.

The sale contract in this case dated December 11, 1934, provided for the sale of 160 acres of land in Harrison county, Iowa, to defendant. The defendant was to pay and did pay the $1,000 cash; he also gave two notes dated the next day, one for $1,000 due on or before January 20, 1935, and the other for $772.05 due on or before March 1, 1935. The defendant was also to cause to be deeded the quarter-section of Colorado land to plaintiff. The Colorado land was to be clear and by warranty deed. The Iowa land, conveyed by quitclaim, was to be subject to foreclosure for the amount of $10,160.60 and also accepted subject to the unpaid last half of 1933 taxes in sum of $67.35 and all subsequent taxes. The plaintiff was also to assign or cause to be assigned the Stansberry lease for 1935 crop, which is on basis of one-half of entire crop, delivered in the bin or elevator. Both parties were to furnish abstract showing merchantable title.

The Iowa land was conveyed to the wife of the defendant and the Colorado land was conveyed by the defendant's wife, who was the owner. The purchaser took possession of the Iowa land. This suit was not commenced until February 14, 1936, on the promissory notes and the answer and cross-petition was filed about two months later.

The evidence discloses that two real estate agents about two months before the contract was entered into prevailed upon the defendant and his wife to inspect the Iowa farm. The next day, the defendant at the request of these agents submitted an offer to purchase this land to an Omaha attorney who was a creditor and representative of the plaintiff, but the offer was rejected. Nothing more was done until the day the contract was entered into, then one of these same agents telephoned the defendant to meet the owner of the Iowa land at the Castle Hotel in Omaha. The defendant and his wife went to the plaintiff's room,

where the plaintiff, a land trader, and the same two agents and another real estate agent were present, and for several hours the proposition was discussed. Later they walked to the Conant Hotel where the contract was drawn, and about dark the defendant left with his wife. Before the contract was signed, the testimony of the plaintiff was to the effect the encumbrance on the Iowa land either had to be renewed or refinanced or he would not make the deal. The defendant also wished to investigate certain statements that had been made by the plaintiff relative to the figures on mortgage or for refinancing obtained from the Lougee office who handled the insurance company mortgage, but he was assured he would find all representations exactly as stated.

The plaintiff several times emphasized the fact that both he and the defendant checked up on the figures that same day. The testimony of the defendant just as emphatically conflicted. If the plaintiff's side of the case is true, then this case should be reversed. If not, then the statements of the plaintiff were fraudulent, because the true facts were concealed and the defendant had every reason to rely thereon. It is difficult to reconcile the testimony in this case, but the testimony of E. H. Lougee convinced this court, just as it convinced the trial judge, that the testimony of the plaintiff was false, and when part of his testimony has been proved false, it is very difficult to credit the remainder, and even, likewise, the contradicted testimony of the real estate fraternity of the plaintiff.

The rapid-talking real estate agents in this case moved too fast. The defendant had a right to rely on the express statements of the plaintiff, which the plaintiff knew were untrue, and defendant, having been induced to forego any such investigation, had a right, when he discovers the fraud, to rescind the contract and seek to have substantial justice done in the matter.

The right to rescind a contract for fraud must generally be done promptly when the discovery is made or when

the truth could be easily ascertained. But, in this case, the fact that the defendant might have discovered the truth by investigation is immaterial where he was fraudulently induced to forego making such investigation and when the representations were such as to disarm his vigilance and induce him to refrain from making such inquiries. 12 R. C. L. 375, sec. 127. He had a right to rely on the express statements of the plaintiff, the truth of which was known to the plaintiff and unknown to him, and also upon representations as to facts in the future. Having acted upon these future facts, if they turn out to be false, will entitle the injured party to the same remedy as fraudulent representations of existing facts.

"A person is justified in relying on a representation made to him in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth." *Foley v. Holtry,* 43 Neb. 133, 61 N. W. 120. The defendant had a right to rely on the express statements of the plaintiff, the truth of which was known to him and unknown to the defendant, as a basis of their mutual understanding. The evidence clearly shows this state of facts and moreover that the plaintiff did not wish any inquiries to be made. A contract for exchange of property will be set aside if fraudulent statements are made and acted upon, and the party making them, knowing they were false, had reason to believe the other party would rely upon them without any investigation. See *Rhodes v. Uhl,* 189 Ia. 408, 178 N. W. 394.

There is nothing in the evidence to indicate that the defendant ever approved the acts of fraud which procured his signature to the contract and notes.

The decree of the district court is the only decree that should have been entered, and it is by this court.

AFFIRMED.